the argument calendar Telford versus Experian. Thank you, honors. And counsel whenever you're ready. Morning, Your Honor, may it please the court. My name is Robert Green of Green and Noblin and I represent the plaintiff appellants in this case. Your honors, Experian has not and this court has subject matter jurisdiction over the claims asserted here. And with that, I would like to reserve the rest of my time for rebuttal. All right. We will, unless my colleagues have any questions. Yeah, I'd like to clarify a question. So Mr. Green, you are taking the position that I want to make sure I understand your argument that that Experian hasn't shown that your clients have standing. That's correct. Are you arguing that your clients don't have standing? I do not have to make that argument. I think the proponent of jurisdiction has to make that argument. So your your entire case right now rests on on the question as to whether a defendant who removes has an obligation to affirmatively prove standing before they get removal. No, not before they get removal, that before any decisions are made on the merits, certainly. And the the fed, the Supreme Court in Cochran versus Guardian Life Insurance Company of America, held exactly that. And the Ninth Circuit has held that in a number of cases as well, that the burden lies on the party asserting jurisdiction, and that there's a presumption that a case lies outside of the limited jurisdiction of the federal court. And your counsel, your view is that in looking at that question, we can't look at the allegations in the complaint. Oh, yes, you absolutely can. And the so so looking, I'm looking here at the amended complaint, but I don't think there's a big difference. So for example, in page or in paragraph 56, experience failure to disclose violates a statutory right to privacy by depriving the consumer of the opportunity to independently investigate the information or file for completeness, accuracy and fraud. Paragraph 57 by depriving the consumers that each experienced subjects each to injury by making it impossible for the consumer to verify that the disclosure was for a permissible purpose and similar allegations. Why isn't explained to me how that doesn't show that there's jurisdiction here and that there is a cognizable claim, maybe not a meritless merit, maybe not a meritorious claim, but a cognizable claim being asserted in this lawsuit. What am I missing? Well, those are the those are the exact facts that were that the Supreme Court looked at in TransUnion versus Ramirez. Those are all ability to go in and look at your records and determine if there's some course of action you could take in the future. And in TransUnion versus Ramirez, they rejected the right to learn of inaccuracies in the credit file so that they can probably be corrected before dissemination. Of course, in TransUnion, the issue was the accuracy of the records, not the dissemination. Isn't that a distinction? No, because under the 12G claims that we make in this case, which is all that's left, we're not alleging anything about dissemination. We're alleging that the notice to us did not contain the right information, that the disclosures were incomplete. So we don't we don't have a dissemination issue in this case. So counsel, I want to play this, I want to play this out. Let's suppose that we agreed with you, if we were to agree with you, then the district court, we would remand with instructions to the district court to remand to state court? Yes. And when you get back to state court, do you have any state claims here? Are these all based on FCRA? All based on FCRA. And if you don't have standing in federal court, do you think you would have standing in state court? Why isn't that the equivalent of a 12B6? If you don't have standing to raise these claims in federal court, that is you don't have standing to recover under FCRA, why don't you lose automatically in state court? Well, two answers to that. The first answer is that's for the state court to decide. And the second answer is that in California courts, there is a there is there's not a subject matter jurisdiction limitation on what the courts can hear the same as there is in federal court. Right. So that the statutory damages give rise to a valid claim in state court. But you will have been kicked out of federal court on the grounds that your clients don't have standing under FCRA to bring a claim under FCRA. Why isn't that subject to the California equivalent of a 12B6? You're non-suited. No, because because it because the claim still has statutory damages. And there's a fine line between in the line that the court looked at in TransUnion versus Ramirez. And in a lot of these other cases that have looked at the 12G issue, and they find that in as Justice Thomas noted in his dissent, these cases will go to state court. And the reason is because a case in California can hear a claim where there's statutory damages that gives rise to a claim, even where you cannot define a concrete harm that meets the standard set by the TransUnion versus Ramirez. So there is a difference. And so counsel, for example, what's in paragraph 87 of the the amended class action, experienced failures subjected each consumer to a concrete informational injury and deprivation of their rights to privacy and accuracy, including but not limited to a number of things. This creates a material risk of harm that disclosures will continue without the ability to counteract them in addition to the actual harm that that has already occurred. Or are you telling us that the Supreme Court has previously said that those types of allegations don't state a claim that can be heard in federal court? Yeah, absolutely. It's a material risk of future harm. And that's that's exactly what the court addressed in TransUnion versus Ramirez. But what I just read said a material risk of future harm in addition to the actual harm that has already occurred. When you said in the complaint, the actual harm that has already occurred, were you misstating the facts? No, but the reference to actual harm that has already occurred is required for this court to go look at that harm. And the harm is that is referenced as actual harm is laid out in those paragraphs that are cited in defendant's brief. And those harms under the Ramirez case don't rise to the level of a concrete harm. Because defendant has not identified any common law cases that would apply or would address the same type of harm and hasn't identified that language you're as the obligation to identify a common law case that would be similar to that actual harm, and they have not done that. So would they would they have to essentially in order in your view to establish that this case can be adjudicated in federal court, would they essentially have to concede that they violated the statute? Is that is that sort of the only way that they can have this case adjudicated? No, absolutely not, Your Honor. And the cases make a distinction between a determination that there's a valid state of claim, and a determination of what the type of harm is, I get that distinction, what they would have to do is take that language that you referred to of actual harm, identify what that actual harm is, that's, and not just a with a, a typical cause of action that has been historically heard, that has that same type of harm, a defamation, libel per se, intentional affliction of emotional distress, those are the types of claims that were addressed in TransUnion versus Ramirez. And we don't see any of those types of claims referred to by defendant here. And none of those claims are, are raised, those types of claims are raised by language in the complaint. But when you filed the similar suit on behalf of Carson, I assume you believe that there was standing for that suit. Correct? I did. And I'll admit, Your Honor, what's the difference? I was wrong. We fought pretty hard for that. We fought through three rounds of the complaint. And at some point, the and we lost them all. And the case, the court in Carson versus Experian went through a whole litany of reasons why it determined we were that it determined we were wrong. And at some point, I'm like, okay, I get it. We don't have subject matter jurisdiction in the federal courts. But we do have in state court. So we'll go there. So the difference is, a court looked at it. We tried, we tried our darndest, we came up with the same allegations that the court is looking at here. And this district judge said, those those do not rise to the level of a concrete harm. I'm like, okay, I get it. And then the same judge turns around and says, now it does. I would repeat the court's What's the difference? Council, do you have do you have any cases that that you can think of, in which somebody does not have standing to file in federal question, that's 28 USC section 1331 in federal court, but can recover under the same act in state court? Yes, I've seen it happen. But I did not research that issue for this hearing. I can't cite the court to chapter and verse on that. You're suggesting that Congress may not be able to create standing sufficient for plaintiffs suing under a federal act to get into federal court, but it may be creating a cause of action that can be litigated in state court. That's that's where we are in this. Yes, yes. And that was exactly the point of Justice Thomas's in his dissent. But that's exactly what he was saying. All right, do my colleagues have any other questions at this point? All right, would you like to reserve the rest? I'll reserve my three minutes, your honors. All right. We'll hear from Experience Council. Yes, thank you. Sorry about that. Unmuting delay. May it please the court, Mayor Fetter for Experian. There are a few things in there to to address, of course, I think maybe it makes sense to start with the TransUnion versus Ramirez case, because that seems to be the thing that's going to be the thing that councils rely on most heavily. I mean, there are several different things. One is, as the court pointed out, those were accuracy claims. Here we're dealing with claims of harm that relate to, you know, a violation of privacy by giving people reports with private information without a recognized in my job that that the privacy harm is is cognizable as Article three harm. But there are a couple of other things that are worth noting also about Ramirez. Probably the first thing worth saying is that, you know, this is a case in which this also goes, by the way, to the question that council raised about what's changed since his earlier complaints that were dismissed for lack of standing. What's changed and what the removal is that there were additional allegations added. And because we're dealing with a removal remand question, I, you know, I'm citing here to the original state court complaint that was removed, but it basically power, ancient paragraph numbers, the amended complaint. So there's a whole thing about this title, the ways in which plaintiffs were harmed. And that's beginning at ER 774. And then it's worth mentioning it at the outset of that, that the plaintiffs actually claim here that they suffered actual damages, which I don't believe they were claiming previously. But if you look at page 77 of 777 of the excerpt, paragraph 80, their original complaint, they say damages, their damages can be assessed by common models of proof, including lost quality of life. So they're saying they suffered actual damages. And that then ties back into their preceding three pages of the specific allegations of, of harm. And it's basically two things. One is that their number of allegations about steps they actually took, time they spent, effort they devoted to paragraphs 77 to 79 of their original complaint, describing the specific efforts of each plaintiff, including contacting third parties, they believe to receive their information. And, you know, again, they, they say they suffer damage in the form of a loss of quality of life. I think that, you know, that would apply probably both to the having to spend time and effort on it, but also the fact that they seem to indicate they sprang into action, support to inference that they were disturbed by and perhaps suffered or claim emotional injury. Now, here's one important difference from Ramirez is this is on a motion to dismiss. That was after a full litigation of the case and judgment on motion to dismiss, where they're claiming loss of quality of life. They're saying that they did all these things that ought to be enough, even if it wouldn't be enough later to actually substantiate that sort of claim. So counsel in paragraph 71 of the first complaint, this violated plaintiff's rights to privacy, which once lost can never be regained. Was that allegation of a violation of a right to privacy in the original Carson complaint? That's a fair question. I haven't blacklined word for word. So I don't want to hazard whether that particular line was what was added, specifically, was allegations about providing their information to third parties without a permissible purpose. So that even if there may have been language about privacy, and I can't remember the exact language, the basis for only comes in, in the new complaint where they talk about the providing their information without a permissible purpose and, and the need to. So basically, people are seeing the information that aren't entitled to it, and the need to prevent that. There are, so this ties into Ramirez again, in at least two ways. One is that Ramirez notes that even where a risk of harm standing alone would not be enough to satisfy article three, that exposure to a risk of harm can cause a separate concrete harm. And this is page 2211 of 141 Supreme Court in Trans Union on the same page footnote seven, the court is the example of current emotional or psychological harm that can result from the risk and you know, I've gone through out here, they allege loss of quality of life, etc. So that's that's one thing that's worth noting that wasn't present in Ramirez is present here. Another thing worth noting about Ramirez is that it was straight damages action. Here, there are also declaratory claims. And Ramirez says that, you know, there's a different standard for damages claims and equitable claims that even though there are some cases where a risk may not give you standing for damages claims, but the purpose of the equitable claims is to prevent harms from happening before they happen. And so risk can qualify for that. And that then leads me back into some more of these allegations where the plaintiffs allege specifics that were prevented from doing to protect their privacy rights. And that ties into this court's science decision, which held that, you know, there was Article Three harm when somebody was deprived of information that would allow him to protect his privacy interests. Here, they say that because they didn't have the information that they're saying they should have had, they couldn't make an certain things that would have protected their privacy, including there's a right that they mentioned to object to the sharing of information between corporate affiliates. And this is like this in their complaint. Paragraph 73 is something they could have done. But for these alleged violations, there's a right to opt out of receiving promotional inquiries. That's also in the same paragraph in Section 1681 B E of the FCRA. And they don't mention that there's also an FCRA right to put on a security freeze that will prevent people from being given your credit report. So, you know, there are actually these multiple distinctions from Ramirez, you have their claims for actual damages, and allegations about specific things they did and suggestions of harm to quality of life. You have them naming specific things that were prevented from doing to protect their privacy interests. You have the fact that this is on motion to dismiss, where they allege these harms, but even though maybe down the road, they might not be able to prove them. And if that happened, then the determination on standing could be made at that stage. And finally, you have the fact that they've got the declaratory relief here that they're seeking, as well, which wasn't present in the Ramirez case in which Ramirez says matters. Does it make any difference on the standing question, the fact that the permissible purpose claims under 1681B or 1681E are no longer in the case? I don't think so. For sort of two reasons that complement each other. One is that, you know, they were in the case until judgment in district court. The motion to remand, you know, you can't remove a partial case. So if there was standing on a permissible purpose claims that made removal proper, and those claims remain in the case, now maybe they could have asked to dismiss other claims if they felt that there was not standing on others. But at the relevant point of deciding on removal and remand, those were in the case. And then under 1447, 28 U.S.C. 1447, the actual authority to which can arise later on in the action if there is no longer subject matter jurisdiction goes away once you reach judgment, it's at any time before judgment. And so, like, I'm not sure what one would do if after judgment, they're saying we're not appealing it anymore. But certainly at all relevant times up to judgment that was there. And then finally, those claims, even if those claims are not being pressed, the privacy harm allegations that they included in the complaint are still there at the ways in which they said that the 1680 exposure claims related to the privacy harms and inability to protect their privacy don't go away just because they're not pressing those. Yeah, and it seems to me that those permissible purpose claims are certainly a stronger argument for you in terms of standing. Well, those, I think, are the most straightforward because, you know, the NIOP case says directly that. And then with those, we don't have to go through the reasoning that we do with the 1681G of the other ways in which those cause real world injury, because the violation itself is the real world injury where with 1681G, we've got a couple more steps. If there are no further questions, I will rest on our briefs. I don't see any. Mr. Green, you have a few minutes left. Thank you, your honor. First of all, the the language you quoted from paragraph 71 of the amended complaint was in paragraph, the same as paragraph 40 in the third amended complaint in Carson, which is at ER 672, it's the exact same paragraph, exact same privacy allegations that Experian argued forcefully and successfully against are what it presents to the court here today. Mr. Green, what is your response to what Mr. Fetter just said about the permissible purpose claims that were in the case? And I know you're not pressing those claims, but they were in the complaint at the time of removal, correct? Yeah, a couple of things. First of all, Ramirez said jurisdiction is not dispensed in gross. You have to look at each claim separately. And they did in Ramirez. And this court should do the same. Secondly, what this court should do and what the district court should have done is what the Northern District did in Benton versus Clarity Services. And that case is cited in the Carson versus Experian case in which Experian got our previous complaint dismissed on subject matter jurisdiction grounds. And in Benton versus Clarity Services, a case removed severed the 1681G disclosure claims from the 1681B claims and remanded the 1681G claims. That's exactly what should have happened here. And that's exactly what the court in Ramirez is instructing. As you look at each of those claims separately and if you take out the permissible purpose, there's nothing left because there are no 1681G claims that this defendant cites that uphold jurisdiction on a 1681G claim. Ramirez didn't do it. Carson didn't do it. The case is cited in the Carson decision. Huff versus Telecheck, Dutta versus State Farm, Benton versus Clarity. All these 1681G claims, the court found no jurisdiction with the same type of allegations that the court is looking at here. I would also say that- Counsel, I don't recall. Did you ask for that specific relief in the district court to adjudicate the permissible purpose claims, but remand other claims? If that's what you're, if I understand you correctly, that that's what you're saying the district court should have done. Did you make that request? We did not specify that request, Your Honor. So the district court had an obligation to do it sui sponte? Well, actually, it did, because that's the rule. It's subject matter jurisdiction. And it's a rule that the court has to do this severing and remanding part of the part of the claims, even in the absence of a motion. Yeah, well, there was a motion to remand. And yes, if it doesn't have subject matter jurisdiction, then it is required to do so sui sponte. And we've cited the cases that require that. I would also make a couple of additional points. All right. There is no injunctive relief in Ramirez. They talk about injunctive relief, but there's no injunctive relief in our case. Declaratory relief is not the same. And in Syed, it was not a 1681 G case. It was a permissible purpose. And it was distinguished by the Carson case from these very allegations. Counselor, I'm experienced. Counsel, I'd like to get a couple of things clarified. So if if we were to send this back to the district court and say, OK, parse this out claim by claim, send back anything that that that you don't have standing, send it back to the state court. And then you went back to state court, litigated it there. Where do you take your appeal? You mean out of state court, you take it to the California Court of Appeal, right? Yeah. And from there to the California Supreme Court. And does it get any further review beyond there? I don't know the answer to that, Your Honor. Well, it seems it seems pretty fundamental to figure this out, though, because if you're correct, then there could be no appeal from the from the California Supreme Court to the U.S. Supreme Court, because the U.S. Supreme Court would lack would lack. There would be no standing. They lack Article three jurisdiction, which means that the California Court of Appeal would be the final would be the final judgment on that on matters of federal law, at least as to this law, which also means, then, that Congress would have created a mechanism for avoiding Supreme Court review. After Marbury, that's pretty interesting work, if you can get it. Well, yeah. And so says Justice Thomas in the Ramirez case. All right. Did you want to conclude? I'm sorry, Judge Bivey, did you have another point that you want? I did have one of the questions, maybe an obvious answer. Is there no pendant jurisdiction here for if we've got standing as to one claim? Can you not get pendant jurisdiction over other claims? You get it over over state claims. You're not going to go for the other FICRA claims. According to Ramirez, no. So you think that the pendant jurisdiction question is gone, even though even though you could have attached California state claims? It's not a state claim. Right, right. And there is no standard measure, but you could have attached California state claims to your complaint. And there might be pendant jurisdiction is there, even though you don't have grounds for, for example, you don't have diversity here. I would say one other case of the court, Lee versus American National Insurance Company, 260 F. Third, 997, the Ninth Circuit case in 2001 that severed claims between two defendants when there was only subject matter jurisdiction as to one. So and that's the case cited in Benton versus Clarity Services and what she relied on for doing exactly what we say should be done here. All right. Thank you. Did the court do that sui sponte? Did the court and Lee do that sui sponte? I don't know the answer to that, Your Honor. All right. I think I think we have your argument. Mr. Green, we thank counsel for their arguments. And the case just argued is submitted. Thank you, Your Honors.
judges: Linn, BYBEE, BENNETT